**LITE DePALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: 973-623-3000
Fax: 973-623-0858

**MILBERG WEISS & BERSHAD LLP**
Jeff S. Westerman
Sabrina S. Kim
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK GOLDING, on behalf of himself and all others similarly situated, | Civil Action: |
| **Plaintiff** | |
| v. | **CLASS ACTION COMPLAINT** |
| MENU FOODS LIMITED; MENU FOODS INC.; MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND; MENU FOODS SOUTH DAKOTA, INC.; and MENU FOODS HOLDINGS, INC. and DOES 1 through 100, inclusive, | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Dockets.Justia.com

Plaintiff Mark Golding ("Plaintiff"), residing in Pleasant Mount, Pennsylvania individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey Corporation, Menu Foods Income Fund, a foreign trust, and its affiliated entities (collectively "Defendants"). Plaintiff alleges the following based on personal knowledge with respect to his own experiences, and otherwise based on information and belief.

## INTRODUCTION

1.    Plaintiff brings this nationwide class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and as a representative of a class of all persons in the United States who purchased pet food products produced, manufactured, and/or distributed by Defendants that caused injury, sickness, and/or death to Plaintiff's household pets and those of other pet owners across the nation. The pet food products were or will be recalled by Defendants, and include products produced between December 3, 2006 and March 6, 2007. The pet food products referenced in this paragraph are referred to as the "Products" in this Complaint.

2.    Defendants are the nation's leading manufacturer of wet pet food products sold by retailers, pet specialty stores, and other wholesale and retail outlets including Wal-Mart, Safeway, Petco, PetSmart Inc., and Kroger, producing more than one billion containers per year. Defendants hold themselves out to the public as a manufacturer of safe, nutritious, and high quality dog and cat food.

3.    Defendants designed, manufactured, marketed, advertised, and warranted their Products as free of defects, and safe and fit for the ordinary

purpose for which they were used, *i.e.*, for household pet consumption. Defendants intended to, and did, place the Products into the stream of commerce to be sold to Plaintiff and other pet owners in this district and throughout the United States.

4.    Since at least February 20, 2007, Defendants knew or should have known that their Products were causing illness and/or death to dogs and cats who consumed them.  Defendants, nonetheless, delayed announcing the recall to minimize the financial fallout from the contamination.  Defendants finally issued a recall nearly a month later, on March 16, 2007, but only because Defendants' biggest institutional customer had initiated its own recall of Defendants' Products at that time.

5.    As a result of Defendants' negligent manufacture of the Products and delay in warning affected pet owners, Plaintiff and members of the Class have unnecessarily suffered damages, including expensive veterinary care (e.g., medical testing, monitoring, treatment and medicines) and burial expenses, loss or disability of their household pets, the purchase price of the Products which Plaintiff and Class members would never have purchased had they known of the defects.

6.    Defendants knew and have since admitted that certain products manufactured in their Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007 are defective and have caused, and continue to cause, serious illness and sometimes death in household pets.

## PARTIES

7.    Plaintiff is a resident of Pleasant Mount, Pennsylvania.  Plaintiff purchased the recalled "Ol' Roy" product and fed it to his dog, who died as a result.  Plaintiff also purchased the recalled "Li'l Red" and "Special Kitty" products and fed them to his cat, who died as a result.  Plaintiff, individually

and as a representative of a class of similarly situated persons (defined below), brings suit against Defendants for offering for sale and selling to Plaintiff and the Class the Products in a defective condition, thereby causing loss and damages to Plaintiff and the Class.

8.    Defendant MENU FOODS INCOME FUND (the "Income Fund") is an unincorporated open-ended trust established under the laws of the Province of Ontario with its principal place of business in Ontario, Canada. The Income Fund controls, directly or indirectly, the other Defendants engaged in the manufacture and distribution of pet food products, including the Products.

9.    Defendant MENU FOODS MIDWEST CORP. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

10.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

11.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

12.    Defendant MENU FOODS, INC. is a New Jersey corporation affiliated with the other Defendants and involved in their activities relating to the Products.

13.    Defendant MENU FOODS LIMITED ("MFL") manufactures and sells wet pet food products to retail customers and brand owners in North America. MFL owns the Kansas and New Jersey manufacturing plants that produced the Products now subject to recall. It is affiliated with the other Defendants and involved in their activities relating to the Products.

14.    Plaintiff is not aware of the true names and capacities of defendants sued as DOES 1-100, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to add the true names and capacities of the DOE defendants once they are discovered. Each of the DOE defendants is legally responsible in some manner for the unlawful acts alleged in this Complaint.

15.    Some or all DOE defendants are controlled by, control, or have a common nucleus of control with one or more named defendants so as to justify disregarding the separateness of those entities or individuals from one another. Some or all DOE defendants are entities or individuals who function as the agents or co-conspirators of named defendants and other defendants (including DOE defendants), facilitating the ability of one another to perpetrate the wrongs alleged in this Complaint.

16.    All Defendants, including DOE defendants, are agents for each other, or otherwise directly or vicariously responsible for their actions, either by agreement or by operation of law, including, *inter alia*, the laws applicable to general partnerships, piercing of the corporate veil, actual or apparent agency, and conspiracy.

## JURISDICTION AND VENUE

17.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

18.    Venue is proper in this district since Defendants transacted business in this district, and the conduct complained of occurred in this district and elsewhere in New Jersey. Venue is further proper in this district under, *inter alia*, 28 U.S.C. §§1391 and/or Pub. L. 109-2.

## FACTS

19.    Plaintiff purchased "Ol' Roy" brand product for his dog, and "Special Kitty" and "Li'l Red" brand products for his cat.

20.    Plaintiff fed the now recalled Products to his dog and cat, never suspecting that the Products were toxic. Afterwards, Plaintiff witnessed his cat lose 12 pounds in one week, and had to have the cat euthanized. Plaintiff also had to have his dog euthanized because the dog was suffering from such frequent and severe seizures.

21.    Defendants were long aware of serious problems with their Products, but delayed initiating a recall and warning the public to salvage their bottom line.

22.    By February 20, 2007, Defendants had received complaints from concerned pet owners about their dogs and cats dying and becoming sick after consuming their Products. Within a week, Defendants began an internal investigation. By March 6, 2007, Defendants were able to identify the likely source of the contamination -- wheat gluten from a new supplier. They tried to correct the problem (in order to limit the scope of a recall) by changing suppliers for production after March 6. Yet, even after March 6, Defendants continued to maintain their silence, as they -- according to their own later announcement -- conducted a "substantial battery of technical tests, conducted by both internal and external specialists."

23.    On March 16, 2007, nearly a month after receiving alarming consumer complaints, Defendants initiated a recall of 60 million cans and pouches of "cuts and gravy" style dog and cat food manufactured at their Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007.

24.    Rather than promptly warning the public about the suspected, and later confirmed, dangers of the Products, Defendants delayed announcing the recall to minimize the financial fallout from news of contamination. Defendants were forced to issue a recall on March 16, 2007, because by then, Defendants' biggest customer (which accounts for 11% of Defendants' annual revenues) had initiated its *own* recall of the Products and placed all future orders of "cuts and gravy" products on "hold."

25.    On March 23, 2007, New York state health officials reported laboratory tests of the Products found high levels of aminopterin -- a rodenticide banned in the United States but commonly used to kill rats in other countries. Aminopterin is a deadly poison that is foreign to pet food, does not naturally occur within it, and would not be expected by any reasonable consumer to be in pet food.

26.    To date, Defendants have reported 14 confirmed deaths. However, the unconfirmed death rate is much higher, and veterinary professionals project thousands of pet dogs and cats will die or fall ill as a result of consuming the Products.

27.    As of March 24, 2007, Defendants stated they do not know how aminopterin got into their Products. Defendants nevertheless continue to produce pet food at the two contaminated plants -- despite New York state's rat poison finding, despite Defendants' own product testing last month that resulted in as many as one in six animal deaths, and despite the countless dogs and cats who have or will become sick or die.

28.    Defendants' delay in disclosing vital information concerning the Products is in direct contrast to their own published Code of Ethical Conduct ("Code"), which touts that they are "committed to full and honest communications with [their] customers about [their] products and services."

Defendants further acknowledge in their Code that, as a pet food company, their customers have "trust in us" and that "their trust in us must be justified" (e.g., by avoiding "promises that Menu [Foods] cannot keep").

29.    Defendants, directly or through actual or ostensible agents and/or co-conspirators, have implicitly and explicitly represented that the Products are fit for consumption by pets and will not result in death and serious illness of pets who consume them.

30.    Defendants have also made representations, including on product labeling and in marketing and promotional materials, concerning the quality of their Products, including explicit and implicit representations that the Products are suitable for healthy consumption by pets.  Defendants ultimately make billions of dollars a year from companies who sell Menu Foods at the retail level.    Accordingly, they keep themselves apprised of the advertising, promotions, marketing and claims made on behalf of Menu Foods' products. Defendants also coordinate with the companies who brand their products at the retail level about the products' safety and quality, including the Products.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed Class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was or will be recalled by Defendants, including that produced from December 3, 2006 and March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition.  Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and

131448 v1
DOCS\399065v1

members of their immediate families.  Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

32.    The Class is composed of thousands of persons throughout the country, and is sufficiently numerous for class treatment.  The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

33.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of the Class.

34.    There are questions of law and fact common to all Class members that predominate over questions affecting any individual members, including the following:

(a)    Whether Defendants' representations, omissions, and conduct regarding the Products were misleading or false;

(b)    Whether Defendants' representations, omissions, and conduct were likely to deceive consumers into believing that the Products were safe for the purpose for which they were sold;

(c)    When Defendants knew or should have known the Products were harmful to pets;

(d)    Whether Defendants failed to promptly disclose the hazards of the Products after they knew of the Products' propensity to harm pets;

(e)    Whether the propensity of the Products to harm pets constitutes a manufacturing or design defect;

(f)    Whether Defendants were negligent in manufacturing or processing the Products;

(g)    Whether Defendants' conduct constitutes a breach of warranties;

(h)    Whether Defendants' conduct constitutes a breach of contract;

(i)    Whether Class members have been injured by Defendants' conduct;

(j)    Whether Class members have sustained direct or indirect losses or damages;

(k)    Whether Class members are entitled to restitution and disgorgement;

(l)    Whether Class members are entitled to injunctive relief.

35.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class action litigation.

36.    A class action is superior to other methods for the fair and efficient adjudication of the claims asserted. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

37.    A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs alleged here. If a class or general public action is not permitted, many Class members will likely receive no remedy for damages suffered as a result of Defendants' misconduct.

## COUNT I
## STRICT PRODUCTS LIABILITY

38.   Plaintiff incorporates by reference all other allegations in the Complaint.

39.   Defendants produce, manufacture and/or distribute the Products for household pet consumption.

40.   The Products were expected to and did reach the Plaintiff without substantial change in condition.

41.   The Products were defective in design or formulation due to the Products' contamination with aminopterin or similar toxins while under Defendants' control.

42.   The Products were also defective in design or formulation due to the lack of quality control safeguards necessary to avoid contamination with aminopterin or similar toxins while under Defendants' control.

43.   The Products were defective due to Defendants' inadequate testing and reporting of test results to the public.  After Defendants knew (or should have known) the risk of injury from the Products, Defendants failed to promptly warn the Plaintiff and public.

44.   As a direct and legal result of the Products' defect and Defendants' failure to warn the public, Plaintiff suffered loss and damages.

## COUNT II
## NEGLIGENCE

45.   Plaintiff incorporates by reference all other allegations in the Complaint.

46.   Defendants owed a duty to Plaintiff to provide products that were safe and not poisonous to pets when consumed.

47.     Defendants breached this duty of care to Plaintiff by making and distributing defective Products that were harmful to pets.

48.     Defendants breached this duty of care to Plaintiff by failing to, among other things: (1) use sufficient quality control, (2) perform adequate testing, (3) proper manufacturing, , and (4) take sufficient measures to prevent the Products from reaching the market.

49.     *Res ipsa loquitur* applies because Defendants had exclusive control of the relevant instrumentalities, including the Products and manufacturing plants, and rat poison or similar toxins would not normally be present, absent negligence.

50.     Defendants knew or, in the exercise of reasonable care, should have known that the Products presented an unacceptable risk to Plaintiff's pets, and would result in damage that was reasonably foreseeable and avoidable.

51.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered loss and damages.

## COUNT III
## BREACH OF EXPRES WARRANTY

52.     Plaintiff incorporates by reference all other allegations in the Complaint.

53.     Defendants expressly warranted that the Products were safe and fit for household pet consumption.

54.     The Products did not conform to these express warranties because the Products are not safe for consumption and causes sickness or death in pets.

55.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff suffered loss and damages.

## COUNT IV
## BREACH OF IMPLIED WARRANTY

56.    Plaintiff incorporates by reference all other allegations in the Complaint.

57.    Defendants knew that the Products were intended to be sold and used as pet food, and implicitly warranted that such Products were of high quality, safe and fit for such use. In fact, the Products were not of merchantable quality and were not safe or fit for their intended use.

58.    Plaintiff reasonably relied upon the skill, superior knowledge and judgment of Defendants as to whether the Products were of merchantable quality, safe and fit for their intended use.

59.    Because of Defendants' failure to warn the public and other misconduct, Plaintiff did not and could not have known about the risks and dangers of the Products until after consumption by Plaintiff's pets.

60.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff suffered loss and damages.

## COUNT V
## BREACH OF CONTRACT

61.    Plaintiff incorporates by reference all other allegations in the Complaint.

62.    The facts, as set forth above, constitute the formation and breach of a contract between Plaintiff and Defendants.

63.    Alternatively, Plaintiff was necessarily the third party beneficiary of a contract between Defendants and intermediaries from whom Plaintiff purchased the Products.

64.    As a result of Defendants' breaches, Plaintiff suffered loss and damages.

## COUNT VI
## VIOLATIONS OF CONSUMER FRAUD ACT (N.J.S.A. §56:8 *et seq*)

65.    Plaintiff incorporates by reference all other allegations in the Complaint.

66.    The facts, as set forth above, constitute violations of the New Jersey Consumer Fraud Act.

67.    As a result of Defendants' violations of law, Plaintiff suffered loss and damages.

## COUNT VII
## UNJUST ENRICHMENT

68.    Plaintiff incorporates by reference all other allegations in the Complaint.

69.    As a direct, proximate, and foreseeable result of Defendants' deliberate misconduct, Plaintiff suffered loss and damages while Defendants profited and benefited from the sale of the Products.

70.    Defendants have accepted and retained these profits and benefits from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' conscious and unconscionable wrongdoing, consumers were not receiving products of the quality, nature, fitness, or value that had been represented to them or that reasonable consumers expected. Plaintiff purchased pet food that he expected to be safe and healthy for his dog and cat, only to endure the sudden and simultaneous death of his pets.

71.    By virtue of Defendants' misdeeds and violations of law, Defendants have unjustly enriched themselves at the expense of Plaintiff. Plaintiff is entitled to, and seeks, the disgorgement and restitution of Defendants' ill-gotten gains, including profits, revenues, and other benefits, to

the extent and in the amount deemed appropriate by the Court.  Plaintiff is also entitled to, and seeks such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

A.    An order certifying the Class as defined above;

B.    An award of actual and consequential damages, including medical and other expenses;

C.    Reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

D.    Appropriate injunctive relief;

E.    Pre- and post-judgment interest to the Class;

F.    Reasonable attorneys' fees and costs; and

G.    Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED:  March 30, 2007            **LITE DEPALMA GREENBERG &
                                    RIVAS, LLC**

                        By:    _Joseph J. DePalma_
                                Joseph J. DePalma
                                Susan D. Pontoriero
                                Two Gateway Center, 12th Floor
                                Newark, New Jersey 07102
                                Tel: 973-623-3000
                                Fax: 973-623-0858

**MILBERG WEISS & BERSHAD LLP**
Jeff S. Westerman
Sabrina S. Kim
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to <u>Workman, et al. v. Menu Foods, Inc., et al,</u> Civil Action No. 07-1338(NLH-AMD); <u>Wilson v. Menu Foods, Inc., et al.,</u> Civil Action No. 07-1456(NLH); <u>Julie Hidalgo v. Menu Foods, Inc., et al.</u> filed on March 29, 2007; <u>Nunez v. Menu Foods, Inc., et al.,</u> filed on March 29, 2007; <u>Turturro v. Menu Foods, Inc.,</u> to be filed simultaneously herewith; and <u>Gagliardi v. Menu Foods, Inc.,</u> to be filed simultaneously herewith . Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.


Dated:   March 30, 2007

**LITE DePALMA GREENBERG &**
**RIVAS, LLC**

By:  _____
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858

*Attorneys for Plaintiffs*